## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARIO EVANS,

                Petitioner,              Case Number: 05-cv-74075

v.                                  HONORABLE GERALD E. ROSEN

RAYMOND BOOKER,

                Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Mario Evans, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the Ryan Correctional Facility in Detroit, Michigan, pursuant to convictions for first-degree murder, possession of a firearm by a felon, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's conviction arises from the shooting death of Jackie Williams on August 12, 2000.

John Howze testified that during the early morning hours of August 12, 2000, he stopped at a Coney Island near the intersection of Seven Mile and Hayes. Before he exited his vehicle, he heard a loud noise that sounded like gunfire. He hunched down, but peered over his left shoulder in the direction of the noise. He saw a white vehicle parked in the driveway of an auto shop. A man carrying a shotgun came from the rear of the vehicle. The man cocked the gun, pointed it in the direction of the parked vehicle and fired the gun. Howze identified Petitioner as

the man who fired the shotgun.

Howze left the scene and drove to his home. He contacted a friend who was a police officer. His friend picked him up and took him to the police station where he gave a written statement to police. On March 4, 2001, he was asked to return to the police station to view a lineup. He picked Petitioner out of the lineup.

Detroit Police Sergeant Felix Kirk testified that, during the relevant time period, he was assigned to the Homicide Section of the Detroit Police Department. He testified that he was assigned to investigate the shooting death of Jackie Williams. In late February 2001, the squad received tips which led them to Petitioner. Petitioner was located and arrested on March 1, 2001. When Petitioner was brought to the Homicide Section, Sergeant Kirk advised him of his rights. However, at the time, he was unable to further discuss the investigation at that time because his squad was involved in several ongoing homicide scenes. Sergeant Kirk spoke with Petitioner again on March 4, 2001, at approximately 11:30 a.m. He again advised Petitioner of his constitutional rights and then took a statement from Petitioner.

In his statement to Sergeant Kirk, Petitioner admitted being involved in the shooting of Williams, but denied pulling the trigger. He stated that he and his friend Fred Bishop saw Williams parked outside the Coney Island in a white Monte Carlo. About a week earlier, Williams had threatened Petitioner with a gun, so he and Bishop left the area to go to Petitioner's mother's house to retrieve a shotgun. They returned to the Coney Island and parked across the street in an auto shop parking lot. Bishop exited the vehicle, which Petitioner was driving, and shot the man in the driver's seat of the Monte Carlo. He and Bishop then ran back to the Petitioner's vehicle and drove it to Petitioner's mother's house, where the hid the shotgun.

2

Wayne County medical Examiner Boguslaw Pietak testified that Williams suffered two shotgun wounds to the head.

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree murder, possession of a firearm by a felon, and possession of a firearm during the commission of a felony. On September 5, 2001, he was sentenced to life imprisonment for the murder conviction, forty to sixty months imprisonment for the felon-in-possession conviction, to be served consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.      Ineffective assistance of counsel requires reversal.

    A.    Mr. Evans was arrested on March 1st and advised of his constitutional rights. Although the police repeatedly sought to extract a confession, he did not give inculpatory statement until March 4th, following a lineup. He was not arraigned until March 15th. Defense counsel ineffectively failed to move to suppress the lineup identification and statement, which resulted from the unreasonable delay in arraignment.

    B.    The only eyewitness saw the assailant once, at night, from across a wide street, for a few very stressful and scary seconds. This was seven months before he identified defendant in a lineup. Trial counsel ineffectively failed to seek the appointment of an expert on identification, or a cautionary instruction on the grave dangers of misidentification.

II.    Defendant's mandatory life sentence for first-degree murder is a "determinate sentence" which the legislature had no power to prescribe under Const. 1963, Art. 4, § 45.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. People v. Evans, No. 238184 (Mich. Ct. App. March 18, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme

Court denied leave to appeal. People v. Evans, No. 125969 (Mich. Oct. 28, 2004).

Petitioner then filed the pending Petition for a writ of habeas corpus, presenting the two

ineffective assistance of counsel claims presented on direct review.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an
>             unreasonable application of, clearly established Federal law, as
>             determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
>             determination of the facts in light of the evidence presented in the
>             State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations. 28

U.S.C. § 2254(e)(1)[1]; see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

---

[1]       28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

4

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

## IV. Discussion

### A. Ineffective Assistance of Counsel Claims

In his first claim for habeas corpus relief, Petitioner argues that his trial attorney was ineffective. Specifically, Petitioner argues that his trial attorney was ineffective in: (i) failing to move to suppress the identification testimony; (ii) failing to move to suppress Petitioner's custodial statement; and (iii) failing to request an expert on identification or a cautionary instruction regarding misidentification.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Sixth Circuit, applying the Strickland standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." McQueen v. Scroggy, 99 F.3d 1302, 1311 (6th Cir. 1996), cert. denied 520 U.S. 1257 (1997).

When considering an ineffective assistance of counsel claim, the reviewing court must afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations omitted).

**1.**

First, Petitioner argues that counsel was ineffective in failing to move to suppress the lineup identification and his custodial statement. Petitioner maintains that both were the product of an unreasonable pre-arraignment delay.

The Constitution requires a defendant be given a reasonably prompt probable cause determination (such as arraignment) following his arrest, and that a delay in arraignment greater than 48 hours after arrest is presumptively unreasonable. County of Riverside v. McLaughlin, 500 U.S. 44, 55-58 (1991). The Michigan Court of Appeals held, and this Court agrees, that there was a McLaughlin violation here. However, Petitioner cannot show a reasonable probability that a motion to suppress his statements on this basis would have been successful. The Supreme Court has explicitly declined to rule on the appropriate remedy for a McLaughlin violation, *see* Powell v. Nevada, 511 U.S. 79, 84 (1994), and the Michigan courts have held that suppression of a statement is not *per se* required for a McLaughlin violation. *See* People v. Manning, 243 Mich. App. 615, 636-44, 624 N.W.2d 746, 756-60 (2000). Instead, under Michigan law, the existence of a delay is merely a factor to be considered in determining whether a statement was voluntary. *See* id. Thus, the existence of a McLaughlin violation alone does not require suppression of a custodial statement given after arrest but before arraignment.

The Michigan Court of Appeals rejected Petitioner's claim that his statements were involuntary. The state court, applying the totality of the circumstances test, concluded, in

relevant part:

> [E]xamining the totality of the circumstances, we conclude that the evidence demonstrates that defendant voluntarily provided his statement to the police. Significantly, the record indicates that defendant was apprised of and understood his Miranda[] rights on at least two occasions before he confessed and spoke willingly to the police. On both occasions, after the officer advised defendant of his rights, defendant acknowledged that he understood those rights by placing his initials next to each right and signing the constitutional rights form. According to the officer, defendant never expressed any hesitation about talking about the shooting and did not request to speak with a lawyer. The record indicates that defendant had prior experience with the police because he was convicted of second-degree home invasion in 1998, receiving and concealing stolen property over $100 in 1999, and attempted carrying a concealed weapon in 1997, and thus, defendant was familiar with Miranda. The record does not indicate that defendant was intoxicated, in ill health, under the influence of drugs or deprived of food, sleep, or water when he gave the statement. To the contrary, officer testimony indicated that defendant was awake and alert and did not complain about lack of sleep when he gave his statement. Nor did defendant appear to be under the influence of drugs or alcohol. The record does not indicate that defendant was threatened with abuse or uneducated, illiterate or unintelligent. Defendant was approximately twenty years old when he confessed and he had obtained a GED. Although there is evidence that the police engaged in repeated questioning before defendant gave his statement, there is no evidence that he was subjected to continuous interrogation or to intimidating police conduct.
>
> In sum, we find, under the totality of the circumstances, defendant's decision to make an inculpatory statement was voluntary, i.e., the product of a free and deliberate choice, notwithstanding the unreasonable prearrangment delay.[] . . . . Because we find that defendant's statement was voluntary, defense counsel was not ineffective for failing to move to suppress it.

Evans, slip op. at 3-4.

Petitioner has not shown that the state court's conclusion that, under the totality of the circumstances, his confession was voluntary was contrary to or an unreasonable application of Supreme Court precedent. Thus, in light of the fact that no controlling Supreme Court precedent requires suppression under these circumstances and the state court's conclusion that the confession was voluntary, Petitioner cannot show a reasonable probability that, had counsel

moved suppress the statement based on the alleged delay in arraignment, the motion would have been granted. Petitioner thus cannot show that counsel was ineffective for failing to move to seek suppression on this basis.

Petitioner next claims that his attorney should have moved to suppress the lineup identification on the ground that it was tainted by the delayed arraignment. The Michigan Court of Appeals held that Petitioner failed to show how the lineup was tainted by the delayed arraignment. The court of appeals noted that the eyewitness made a statement to the police on the day of the shooting and his account of events was thus known to police prior to Petitioner's arrest. Therefore, the eyewitness's identification was not discovered and procured as a direct result of Petitioner's detention. Therefore, the court of appeals' concluded that Petitioner's attorney was not ineffective in failing to move to suppress the identification where no meritorious basis for doing so existed.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morris, 477 U.S. 365, 375 (1986). There is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. While the Court may not review Petitioner's Fourth Amendment claim as an independent claim warranting relief on habeas review, see Stone v. Powell, 428 U.S. 465, 494-95 (1976), the Court must consider the merits of the claim in order to determine whether counsel was ineffective in failing to litigate it.

The Michigan Court of Appeals held that Petitioner's counsel was not ineffective because the evidence which Petitioner argued counsel should have moved to suppress was properly admitted. The state court held that trial counsel is not ineffective for failing to raise an objection that likely would have been denied. The Michigan Court of Appeals held that the lineup identification was not tainted by the unlawful detention, reasoning that the eyewitness's identity was known to police long before Petitioner was located and his identification was not directly discovered or procured as a result of Petitioner's detention. Evans, slip op. at 4. Under Michigan law, "[t]he exclusionary rule will not bar the admission at trial of evidence which has been acquired absent exploitation of a statutorily unlawful detention." People v. Lewis, 168 Mich. App. 255, 262-63 (Mich. Ct. App. 1988).

Petitioner has failed to show that the Michigan Court of Appeals' application of Michigan law to determine that a motion to suppress likely would have been meritless was incorrect. Therefore, Petitioner's claims lack merit and he cannot establish that his attorney was ineffective for failing to raise them.

2.

Next, Petitioner claims that his attorney was ineffective in failing to seek appointment of an expert witness on identification or to request a cautionary jury instruction regarding the dangers of misidentification. The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, stated, in pertinent part:

> In the present case, defendant failed to establish that the outcome of the trial would have differed had an expert testified regarding the fallibility inherent in eyewitness identification. In his statement, defendant admitted to participating in the shooting. The identification evidence corroborated defendant's statement by placing him at the scene of the crime. Thus, even if an expert testified regarding the fallibility inherent in eyewitness identification, defendant implicated himself

by his own statement. Furthermore, defense counsel competently attacked the eyewitness' identification through cross-examination by eliciting testimony that it was dark outside at the time of the shooting and concerning the perpetrator's description. Defense counsel then attacked the eyewitness' identification by arguing in his closing argument that his description of the perpetrator also fit the description of Fred Bishop, who defendant implicated as the shooter in his statement, and that the dark conditions might have caused him to misidentify the person he observed fire the shotgun. Further, at the conclusion of trial, the trial court instructed the jury on witness credibility and identification, informing the jury of the proper considerations included, among others, how long the witness observed the offender how far away from the scene the witness was located, how well the area was lighted, and the circumstances at the time of the identification. Under these facts, we find that defendant's trial, without expert testimony regarding the fallibility of eyewitness identifications, was not fundamentally unfair . . . , and that the jury was sufficiently informed of the proper considerations in determining whether to accept or reject eyewitness identification, People v Carson, 220 Mich App 662, 678; 560 NW2d 657 (1996), adopting certain findings of the vacated decision People v Carson, 217 Mich App 801, 807; 553 NW2d 1 (1996). Defendant has not shown that counsel's assistance was deficient.

People v Evans, slip op. at 5.

This Court finds the state court's analysis persuasive. Petitioner provides no support for his claim that an attorney, acting within "the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, would not have proceeded to trial without hiring an expert witness on identification. Petitioner's argument is even weaker considering that defense counsel ably cross-examined the eyewitness regarding his ability to identify the shooter based upon the lighting and the witness's distance from the shooter. Petitioner therefore has not shown that counsel's performance was "so defective as to require reversal of a conviction" or that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The Court therefore concludes that defense counsel's decision not to call an expert witness in misidentification at trial does not entitle Petitioner to habeas relief.

### V. Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  August 30, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 30, 2007, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager